The court now calls agenda number 9, case 116717, Nationwide Financial, L.P. v. Michael Thomas Pobuda. The employee ready to proceed. This is a one-sided argument. May it please the court, Chief Judge, Justice Garmon, members of the court, my name is Gino DeVito and I represent Nationwide Financial in this case. In this case, after unsuccessful efforts to resolve their differences, Nationwide filed a complaint alleging trespass against Michael and Laura Pobuda, who are neighbors on adjoining property. They, in turn, filed a counterclaim alleging prescriptive easement over a strip of land of Nationwide that they were using to access their property. Ultimately, the Pobudas moved for summary judgment and Nationwide countered with its cross-motion for summary judgment. The effect of that, of course, is that the parties agreed that there were no questions of fact involved and that the matter could be resolved based upon the record as a matter of law. The circuit court made a finding, a finding consistent with an earlier finding of now Justice Epstein, who had dismissed the Pobudas' original counterclaim because it did not satisfy the requirement of exclusivity. The judge who dismissed the amended counter complaint of the Pobudas also found a lack of exclusivity relying upon three cases from the appellate court, the 1990 case of Chicago Steel, the 2006 case of City of Des Plaines, and the 2011 case in Catholic Bishop. Each of those cases is authority for the principle that in order to satisfy the element of exclusivity in a prescriptive easement case, the claimant must allege and prove that the owner, The Pobudas attack that finding based upon their claim that the three cases were based upon a public easement or public use, whereas they have an independent private easement or private use. You can scan the cases, at least Chicago Steel and Catholic Bishop, and you find no reference to that. The basis of the cases in those instances had nothing to do with a public use or a public easement. The cases don't even refer to that. And in any case, the cases in Illinois make clear that there's no distinction between public and private easements. The Pobudas really don't attack the propriety of those decisions except to make the distinction I have just made. The court was absolutely correct in holding that exclusivity had not been met because in the Pobudas counterclaim, they specifically alleged that Nationwide and its predecessors had used the strip of land in question. As a matter of fact, a predecessor title holder of the Pobudas property asserted that they used the strip of land virtually every day on a daily basis. So clearly, there could be no showing that the use of that property had been taken away, had been deprived from Nationwide and its predecessors. Are the prerequisites for establishing title by adverse possession precisely the same as establishing a prescriptive easement? Your Honor, the standards, and by the way, all the cases refer to exclusivity and hostility or adverseness in both adverse possession cases and in prescription, easement by prescription. But there's a difference between hostility and exclusivity. Yes. And it happens that hostility or adversity is another basis for this Court's affirmance, and I'll get to that momentarily. But the difference is that in an adverse possession case, the claimant actually possesses the property, perhaps builds a house on the property, but possesses it. In a prescriptive easement case, the claimant gets use of the property, not possession. So the result is different. But if I could just stop you there, Mr. DeVito. If the elements are the same, why is the result different? Doesn't that seem to be a logic problem? No, Your Honor, because in an adverse, in a prescriptive easement situation, it's totally proper to give notice to the title holder. It's desirable to do that. The title holder, who may have, in this case, as every indication, given permissive use to the property, would have no way of knowing that the claimant was making this claim. So that requiring the claimant to actually dispossess the owner of the property for the 20-year required period makes absolute sense. So that the title holder is on notice that there is a challenge and something should be done about it, to give the title holder an opportunity to challenge that. And to avoid a cloud on the title, which neither the title holder or any subsequent purchaser would be aware of. There's just no way to know about it. So having this strict exclusivity rule makes all kinds of sense, even in the case of a prescriptive easement. Mr. DeVito, keeping with that point, the disposition requirement, you don't see any inconsistency with the nature of an easement where both the title holder of the fee and the one who acquires an easement by prescription are both entitled to use the strip subject to the easement? To say there's this disposition requirement and then the nature of it is they're both allowed to use it. There's no inconsistency there as you see it? Absolutely not, Your Honor. What's required under the elements for a prescriptive easement is that the dispossession, which is an element of exclusivity, lasts for a period of 20 years. So you may have a situation where an owner is absent or is simply not using the strip. For example, in this case, Nationwide could have put another driveway on its property and decided to use that driveway solely totally ignoring the other strip. During that period, it would be argued that for the 20-year period, the owner was totally dispossessed, at least of use of that property. At the end of 20 years, if the owner said, well, you know, I think I'd like to use that strip, then he would have, he doesn't lose possession as in an adverse possession case, but he would have the ability then to use it along with the person whose prescriptive easement would be upheld under those circumstances. So it's not a situation where, as in the case of adverse possession, the owner, the title holder is absolutely dispossessed of property. In the case of a prescriptive easement, use by the title holder as well as the claimant occurs. This bright-line test, this strict construction by the appellate court in the three cases I've noted, does make sense because in fairness, title holders and prospective buyers should have noticed that there is a claim here. Is that a change in the law from the 1890 case of McKenzie v. Elliott where the court clearly said that in dealing with the element of exclusivity that it doesn't mean that the person has to have the only use of the property, but it's that his right to use it does not depend upon a similar claim by others, but others can use it, which seems to include the landowner? Your Honor, you will note that virtually every case dealing with prescriptive easement talks about the non-requirement of solo use as long as others are using it, as long as the claimant's claim is not dependent upon the rights of others. But the case you've referred to, McKenzie v. Elliott and other subsequent cases, Schmidt v. Brown and Look v. Berninger, are older Supreme Court cases which have a common thread. In each one of those cases, a promise or an agreement was made with the claimant concerning use of the property. And in each case, there was a reliance on that promise. In McKenzie, the case that, well, more accurately, Schmidt v. Brown, the claimant was asked to deal with somebody else and procure some benefit for the title holder. He did that. Based upon that, the title holder said you have a lifetime easement through my property. In the Look case, the brothers who were settling their father's estate agreed that one brother would get the south 40 acres but would have a lifetime easement through the north 40 of the other brother. So you had a situation there where there was a promise or an agreement which was acknowledged by the title holder and upon which the claimant based proper reliance. So in those kinds of cases, it shouldn't make any difference. In each of those cases, the court made note of the fact that there was an oral agreement which violated the statute of frauds, but notwithstanding that, they gave weight to these promises and agreements. I see my time is running out, and I'd just like to say something about adversity. We encourage the court, if you need to get to it, if you disagree with our view of a Catholic bishop and the holdings of the appellate court, you should address the issue of adversity because this record is complete, and this court is able to do so. And I might point out that even in the reply brief, the probudas asked this court to address the issue of adversity. In this case, there is no proof of adversity. The rule is that when the origin of an easement is unknown, there's a rebuttable presumption that the easement was taken under hostile circumstances. But there's another presumption which trumps that presumption. In this case, the predecessor title holder to the probudas testified that her relationship with the predecessor title to Nationwide, that their relationship was neighborly, that it was very cordial, it was friendly. Those terms mean, and have been translated by the court, by this court, as indicative of permissive use, and permissive use can never, ever morph into hostile taking, so that the elements of non-hostility of permissive use is manifest in this case. And the alternative basis for affirmance is the lack of hostility. Thank you, Mr. DeVito. Thank you, Your Honor. Case number 116717, Nationwide Financial LP v. Probuda, is taken under advisement as agenda number nine, and excused at this time.